IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DARRYL WAYNE MANCO,

                    Plaintiff,

          v.                         CASE NO.  08-3205-SAC

JOHN/JANE DOES,
et al.,

                    Defendants.

MEMORANDUM AND ORDER

     This matter is before the court on a complaint alleging civil
rights violations that was filed by a prisoner in state custody[1].
Plaintiff's complaint is 50 pages long and has over 100 pages and
exhibits attached.  With the complaint, plaintiff filed a "Brief in
Support of Initial Complaint" and attached exhibits amounting to
over 200 pages.  Plaintiff's initial pleading is not a "short and
plain statement" of his claims, and patently violates Rule 8 of the
Federal Rules of Civil Procedure.

     Plaintiff names as defendants numerous state employees at five
different Kansas prison facilities and from several agencies[2].  In

---

[1]     Mr. Manco was convicted in Geary County, Kansas, in 1992 of indecent
liberties with a child and aggravated criminal sodomy of his nine-year old step
daughter.

[2]     Plaintiff names the following employees at El Dorado Correctional
Facility (EDCF): Raymond Roberts, Warden; Michael Nelson, Former Warden; S. Buser,
Mail Room Supervisor; J.J. Smith, Sergeant, Intelligence Investigation; T.J.
Hermeck, Lieutenant, Intelligence Investigation; Mike Myers, Former Facility
Specialist; and Debbie Bratton, Deputy Warden.  He names the following employees
at Lansing Correctional Facility (LCF): David R. McKune, Warden; Roger Bonner,
Former Chief Security Officer, Intelligence Investigation; Rick Kendall, Director
of SATP/DCCCA; and John Bechtold, Former "SST".  He names the following employees
at Hutchinson Correctional Facility: Robert Hannigan, Former Warden; and (fnu)
Lyons, Former Lieutenant, Intelligence Investigation.  He names John Schell,
Psychologist, at the Topeka Diagnostic Center; and Dr. John Schull, Dentist, at
the Ellsworth Correctional Facility.  He also names Kathleen Sebelius, (former)
Kansas Governor; Roger Werholtz, Kansas Secretary of Corrections; Charles Simmons,
Former Secretary of Corrections; and William Cummings, Secretary of Corrections
Designee.  In addition, plaintiff names John Lamb, Director of Enforcement,

his hundreds of pages of complaint and support brief, he does not describe acts by each of the named defendants showing their personal participation in the decade of torture that he alleges. Instead, the complaint is a morass of general statements and complaints without facts in support. Plaintiff provides details mainly as to the torture he believes he has experienced from an implanted device and in attempting to prove the existence of technology for such a device.

Plaintiff complicated this matter further by also filing with his complaint, a motion "Seeking Leave to File Motion for Protective Order" (Doc. 4), in which he moved to file this "case under seal", but did not follow procedures to prevent public filing. Nevertheless, the case was initially designated as sealed. The court then considered and denied plaintiff's motion to seal the case, finding plaintiff had not properly proceeded, and had not set forth sufficient facts or grounds to establish that the case should be "exempt" from "Public Record" (Doc. 9). Plaintiff was given time to voluntarily dismiss his complaint, if he chose to prevent its filing in the public domain. He was notified that if he did not voluntarily dismiss the complaint within the time allotted, this action would be publicly filed and proceed in the public domain. Plaintiff did not move to voluntarily dismiss the complaint. Instead, he filed a "Motion of Objection" to the court's Order, making conclusory statements in disagreement with the court's

---

Apprehension and Investigation, Topeka; Ray Lowery, Administrative Executive For DCCCA, Lawrence; and Barbara Owens Former Director SAPT/DCCCA, Lawrence. Plaintiff also names 21 "John/Jane Does" including: 6 "Kansas Bureau of Investigation"; 1 "Mail Room Employees"; 2 Former Chief Security Officers of Intelligence Investigation at LCF; 3 Former Directors of Enforcement, Apprehension and Investigation; 4 Former Deputy Wardens at LCF; and 5 Former Information Resource Managers.

finding that he had not shown adequate grounds to seal and claiming interference with his legal materials.  Plaintiff's allegations to support his Objection are not sufficient to require the court to reconsider its Order denying his request to seal this case.  With his Objection, plaintiff sent a letter stating that if the court overrules his Objection, he gives the clerk written permission to publicly file his action (filed as Doc. 11).  The court concludes that this case shall be filed in the public domain, and any pleading previously filed herein will no longer be designated as sealed, except those filed in connection with Mr. Manco's motion to proceed in forma pauperis.

**CLAIMS AND RELIEF SOUGHT**

Plaintiff claims that "defendants" have violated his federal constitutional rights, including those under the First, Fourth, Eighth, and Fourteenth Amendments.  He states that some of his claims "go back more than ten years" while others are within the two-year statute of limitations; however he does not distinguish which occurred within the two-year limitations period.

The court is asked to refer plaintiff's complaint to the United States Attorney for criminal prosecution of defendants, and to order a full investigation and an IRS audit.  He also seeks the return of all good time and fines for disciplinary infractions imposed since 1996, and new parole consideration.  In addition, he seeks removal from his body of "the tracking devices or similar technology." Finally, plaintiff seeks money damages, for every day he spent in segregation since 1996, for being passed by the Parole Board for ten years, for severe "legal injuries", for mental and medical expenses,

for emotional trauma and extreme psychological injuries, for physical injuries, for deliberate indifference, pain and suffering, for invasion of his body, and for violation of his constitutional rights.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Plaintiff filed a Motion for Leave to Proceed in forma pauperis (Docs. 3, 7), and attached an Inmate Account Statement in support as statutorily mandated. Under 28 U.S.C. § 1915(b)(1), an inmate granted such leave is not relieved of the obligation to pay the full fee of $350.00 for filing a civil action. Instead, being granted leave to proceed in forma pauperis merely entitles an inmate to proceed without prepayment of the full fee, and to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2). Furthermore, § 1915(b)(1), requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account during the relevant period was $85.40, and the average monthly balance was $21.14. The court therefore assesses an initial partial filing fee of $ 17.00, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee, and will be given time to submit the fee to the court. If he does pay the initial fee in the time allotted, his motion will be granted and he will be allowed to pay the

4

remainder of the fee through automatic payments from his inmate account. If he does not pay the initial fee in a timely fashion, the motion will be denied and the entire fee will become due and owing to the court.

**SCREENING**

Because Mr. Manco is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). 28 U.S.C. § 1915(e)(2) additionally provides that in proceedings in forma pauperis, "the court shall dismiss the case at any time if . . . (B) the action . . . is frivolous or malicious [or] fails to state a claim on which relief can be granted. . . ." Having screened all materials filed, the court finds the complaint must be dismissed as frivolous.

**IMPROPER CLAIMS FOR RELIEF**

At the outset, the court notes it has no authority to order a "full investigation" and criminal prosecution of defendants by the United States Attorney or an audit by the IRS. Accordingly, these claims for relief are denied. In addition, plaintiff's claims that are in the nature of habeas corpus claims are denied, without prejudice. Plaintiff has previously been informed that any claims of entitlement to earlier release, such as through restoration of

good time or reconsideration for parole[3], are habeas corpus matters that must be presented by petition for writ of habeas corpus, and may not be litigated in a civil rights complaint.

## CLAIMS OF INTERFERENCE WITH MAIL

Plaintiff generally claims that "defendants" have interfered with, seized and destroyed his mail to "the media" and "legal mail" to cover up the implantation device and related abuse of which he complains and to prevent investigations and adverse publicity regarding their "illegal experiments". These claims are not supported by sufficient facts showing a federal constitutional violation by all or any named defendants. Plaintiff does not provide adequate information including dates, locations, descriptions of acts by each defendant, or other circumstantial facts regarding his claims.

The few underlying dates he does provide are in connection with his correspondence with a Mr. Waldrop. Mr. Manco claims that "defendants" individually "and conspiratorially exhibited a Pattern and Practice to seize, censor and destroy" his outgoing mail addressed to Mr. Waldrop[4]. However, plaintiff's allegations and exhibits indicate he has frequently communicated with Mr. Waldrop since 1999 concerning his beliefs that he was being tortured and controlled through an implanted device. Although he claims

---

[3]     The court also notes that plaintiff does not provide sufficient facts regarding disciplinary proceedings and sanctions or denial of parole to state a claim for habeas corpus relief.

[4]     Plaintiff alleges he "used" Mr. Waldrop "of Newswatch Magazine" to document the abuses of which he complains herein and that Mr. Waldrop began to support plaintiff's efforts to expose the abuses to the public.  He also alleges he used him to communicate with his court-appointed habeas counsel.

particular mail he sent to Mr. Waldrop was not received, he provides exhibits in which prison officials indicated in administrative grievance responses that all his mail to Waldrop had been mailed from the institution.  Moreover, all the correspondence plaintiff specifically lists as having been sent to Waldrop and not received is dated in 2004.  The statute of limitations for any claim regarding 2004 mail expired in 2006.

Except for his dated correspondence with Waldrop, plaintiff does not describe a particular piece of either legal[5] or media mail together with how, when, where, and by which defendant it was mishandled.  Instead, he generally claims that "various prison officials" passed down orders to seize and destroy his mail to the media, and then conspired to conceal their identities.  Plaintiff may not recover money damages against a myriad of named defendants based on these completely conclusory allegations.

**<u>CLAIMS OF CRUEL AND UNUSUAL PUNISHMENT</u>**

Plaintiff alleges as the overarching basis for this complaint that between 1992 and 1996, he was "unwittingly implanted with a highly dangerous experimental Tracking Device."  He "believes" defendant dentist Shull implanted the device.  He describes the device as "cellular" and claims it "delivers sound waves along the skull or jawbone" to his inner ears causing his eardrums to vibrate and him to hear sounds and speech "without making such communications audible to those around plaintiff."  Plaintiff

---

[5]     Plaintiff makes the conclusory claim that he was denied the right to communicate with his appointed counsel through Mr. Waldrop.  He alleges no facts indicating he was unable to communicate directly with his counsel.

alleges these implants are "highly dangerous," and are "concealed
from the Public through the Intelligence Division or the KBI of the
Kansas Department of Corrections by a few persons holding degrees in
'Perverse Behavioral Modification Psychology'." He further alleges
that "defendants" are abusing radio wave and microwave technology by
creating "pulses" that cause his body to malfunction, internal
burning or cooking sensations, and unbearable physical pain "easily
capable of causing imminent death." He claims defendants are using
these devices and conditioning methods along with sexual perversion,
electrical shock, and sleep deprivation to control and manipulate
him, to alter his views and attitude, and to "depattern" his
personality, as well as to punish him for not complying with their
demands. He also claims "defendants" have heard and monitored
everything he "thinks, speaks, or writes;" communicated with him
wherever he is; and tracked his every move through "Global
positioning System". He further claims that "a small clandestine of
Enforcement    Apprehension    Intelligence    Investigation
S.A.T.P/D.C.C.C.A. and or the Kansas Bureau of Investigation" are
trying to "force plaintiff . . . to eavesdrop on conversations, to
accumulate criminal intelligence behind prison walls," and to train
for outside surveillance.

    Plaintiff also makes conclusory allegations that he was
"cheated out of" his post-conviction remedies[6] and parole[7],

---

[6]    Again, as Mr. Manco has repeatedly been informed, any claims he has
challenging his state conviction may only be raised by petition for writ of habeas
corpus, and may not be litigated in a civil rights complaint.

[7]    Plaintiff claims he was "classified as an incorrigible offender"
before the parole board solely because defendants physically and psychologically
manipulated his behavior for his refusal to cooperate in their electromagnetic
experimentation.

threatened, manipulated into misbehavior and fighting which has resulted in disciplinary infractions[8], held in segregation under false allegations[9] and set-up charges, surrounded by whispering voices, wrongfully "tagged as paranoid and delusional", systematically transferred from prison to prison, given "mind altering medications", deprived of his religious practices, and punished on a daily basis because he has steadfastly refused for years to gather intelligence within the prisons regarding drug trafficking. He also claims he is being conditioned to gather such "intelligence" outside prison while on parole. He describes a myriad of horrible conditions, pains and injuries; however, as noted, no dates, places, or names of actual participants in particular events are ever provided. All these general complaints are based upon plaintiff's overriding claim that "defendants" have tortured him for over twelve years through implanted devices and waves emitting from prison air conditioning ducts "under the noses" of prison officials and that medical personnel treating plaintiff have been unaware of the implanted devices.

Plaintiff's main "support" for his claims is what he terms "conclusive" evidence that the technology for the devices he describes exists and has been patented. He cites numerous books and articles, not shown to be primary, current, authoritative sources, mostly from the 60's and 70's discussing transplanted homing devices and mind control.

---

[8]    Plaintiff claims "defendants inflictions" are responsible for every one of his disciplinary infractions since 1996.

[9]    Plaintiff specifies segregation for 18 months in 2000. Any claim arising during this time period is obviously time-barred.

The court has painstakingly considered all plaintiff's voluminous writings and filings[10]. The court finds that all plaintiff's complaints in this case are based upon his claims of having been implanted, tortured, and manipulated with mind-reading and thought and behavior-controlling devices against his will for the purpose of coercing him to act as an informant and as "bait", and to punish him for his refusal. The court further finds that Mr. Manco's conclusory allegations may only be characterized as "fantastical," and are thus subject to dismissal under § 1915A(b) and § 1915(e)(2)(B). It is simply not credible that numerous and widespread state officials, from the Governor to employees of various state agencies, have for twelve years devoted scarce corrections or state investigative financial resources and employee time harassing, torturing, and unsuccessfully attempting to persuade this one inmate to perform uncover work. Nor is it credible that plaintiff has been implanted with a device that reads his thoughts and controls his behavior, or that the prisons are equipped with ducts emitting electronic waves that exert such control.

The court concludes that this action must be dismissed as legally frivolous. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may thus dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Id.

_____

[10] It has been difficult to complete processing of plaintiff's filings, along with the press of other matters, due to Mr. Manco's failure to comply with local and federal rules; his filing of baseless, improper, and difficult-to-decipher motions and requests; his premature submission of voluminous exhibits; together with his stream of conclusory and often repetitive statements. Nevertheless, the court regrets the delay in ruling on Mr. Manco's many motions and claims.

at 327.   This court has been mindful that, in determining the sufficiency of a pro se complaint, the allegations must be construed liberally in favor of the plaintiff.   See Haines v. Kerner, 404 U.S. 519 (1972).   The Court is also aware that all factual allegations in the complaint and reasonable inferences that can be drawn therefrom should be accepted as true.   However, the Court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions."   Under § 1915, a federal judge has the unusual power to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless" including claims alleging incredible or delusional scenarios.   Nietzke, 490 U.S. at 327.   "[A] finding of factual frivolousness is warranted when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."   Denton v. Hernandez, 504 U.S. 25, 33 (1992).   In Denton, the Supreme Court did not precisely define "baseless," but indicated that "clearly baseless" encompasses allegations which are fanciful, fantastic, delusional, irrational, or wholly incredible. Id. at 32-33.

Plaintiff's allegations in this case can only be characterized as wholly incredible and delusional and hence factually frivolous. See 28 U.S.C. § 1915(e)(2)(B).   In fact, his claims and his presentation of those claims in this case are "text-book examples" of factual frivolity.   See e.g., Owens-El v. Pugh, 16 Fed.Appx. 878, 879 (10th Cir. Aug. 1, 2001)(unpublished op.)(Plaintiff's allegations of torture through a mind-control device were dismissed by the district court as frivolous and the appeal was dismissed.), cert. denied, 535 U.S. 1082 (2002); see also Fails v. Escambia

County Jail, 2009 WL 88493 (N.D.Fla. Jan. 12, 2009); Hiler v. Taylor, 2008 WL 2810171 (W.D.Wisc. Jul. 18, 2008); Philpott v. Arkansas, 2007 WL 2021824 (E.D.Ark. Jul. 10, 2007); Hronis v. California Dept. of Corr's, 2005 WL 3481494 (E.D.Cal. Dec. 19, 2005)[11].   The court discerns no portion of the complaint that requires a responsive pleading as presented[12].


**OTHER MOTIONS**

Plaintiff has also filed a Motion to Waive Copy Requirements (Doc. 5), Motion to Exceed Page Limitation (Doc. 6), Motion to Appoint Counsel (Doc. 12), Motion for Preliminary Injunction (Doc. 13), Motion for Cease and Desist Order (Doc. 15), Motion to Proceed (Doc. 16), Motion for Court Action (Doc. 17), and Motion for Leave to File Motion to Correct Pleading (Doc. 18).   The court finds that plaintiff's Motion to Waive Copy Requirements and Motion to Exceed Page Limitation have effectively been granted, since the court considered all materials filed.   The court further finds that his Motion to File Correction (Doc. 18) should be construed as a Motion to Supplement, and granted since the court considered the supplemental information provided therein[13].   The court further finds

---

[11]     Copies of these unpublished opinions are attached to the complaint.

[12]     If plaintiff has claims against specific individuals for censorship of particular pieces of his mail, or for denial of medical treatment for a serious medical condition, or for interference with his right to petition the government, and he can state facts including names of actual participants, dates, locations, and descriptions of the wrongful acts of each participant named as a defendant, then he may file a new complaint against those individuals who directly participated.   However, any acts that occurred more than two years prior to the filing of a civil complaint are time-barred.

[13]     Motions for other relief are not the proper way to either amend or supplement a complaint.   Any claim that plaintiff attempted to add simply by filing a motion for some other relief, did not result in the filing of a properly amended complaint, and no such claims outside the original complaint and brief have been considered.   Plaintiff's refinement as to the technology used in the

that all other pending motions, with the exception of plaintiff's in forma pauperis motion, should be denied as moot.

**IT IS THEREFORE ORDERED** that this action is unsealed and proceeds as publicly filed, and that all documents previously filed as sealed are unsealed, except those documents filed in connection with plaintiff's motion to proceed without prepayment of fees that are otherwise sealed.

**IT IS FURTHER ORDERED** that plaintiff is assessed an initial partial filing fee of $17.00, that is due and payable to the court within thirty (30) days. Upon receipt of plaintiff's payment of this fee, his motion to proceed without prepayment of fees shall be granted. If plaintiff fails to pay the initial partial fee within the time provided, his motion shall be denied. Any objection to the initial fee portion of this order must be filed on or before the date initial payment is due.

**IT IS FURTHER ORDERED** that this action is dismissed as legally frivolous, and all relief is denied.

**IT IS FURTHER ORDERED** that plaintiff's habeas corpus claims are dismissed, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Waive Copy Requirements (Doc. 5) and Motion to Exceed Page Limitation on Brief (Doc. 6) are granted; and plaintiff's Motion to File Correction to Pleading (Doc. 18) is construed as a Motion to Supplement and is granted.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Doc. 12), Motion for Preliminary Injunction (Doc. 13),

---

implanted device was fully considered as supplemental material.

Motion for Cease and Desist Order (Doc. 15), Motion to Proceed (Doc. 16), and Motion for Court Action (Doc. 17) are denied as moot.

**IT IS FURTHER ORDERED** that if this action is not overturned, it shall count as a strike against plaintiff pursuant to 28 U.S.C. § 1915(g)[14].

**IT IS SO ORDERED.**

Dated this 29th day of July, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

---

[14]    1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id.  This would at least be plaintiff's second strike.  See Manco v. McKune et al., Dist.Ct.No. 94-CV-3378 (D.Kan. September 6, 1996), App.Ct.No. 96-3312 (10th Cir., Oct. 24, 1997)(This "appeal is frivolous within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i)" and "counts as a 'prior occasion' under 28 U.S.C. § 1915(g)." Id. at *3.  Plaintiff is forewarned that if he acquires a third strike by filing another frivolous action in federal court, he may thereafter be required to pay the full filing fee of $350.00 in advance before proceeding in federal court.